Good morning, Ben Coleman for Mr. Wendel. This case involves death and serious bodily injury enhancements that triggered a 20-year mandatory minimum under 21 U.S.C. 841. What I was going to do, just as I did in the brief, is I was going to start with the death enhancement and then hopefully I'll have time to get to the serious bodily injury finding. With respect to the death enhancement, we have two arguments. I just want to say one thing briefly on our first argument, which is kind of a pure sufficiency argument. And I think as the Court is aware of the factual context, because sometimes the names, it gets confusing with all the different names, we have an A to B to C to D distribution chain. A being Mr. Wendel, he distributes the fentanyl to B, which is Villapinea, which is the cooperating witness. Villapinea then distributes to C, which is Velazquez, who does not testify at the trial. And then according to the government's theory, Velazquez then distributes to D, which is Mr. Estrada, who unfortunately passes away. And our position is that there is just an evidentiary gap due to Velazquez's failure to testify that the government did not fill. And the one point I wanted to make is that there were ways that the government perhaps could have filled the gap, even... This was the odd thing to me, that your client Wendel was in the B unit. I don't understand what the differing units are, but he was in a B unit with one other person. And that person was getting out of B unit. And he said, here, take my fentanyl, which seemed pretty odd to me. And so the fentanyl was already in the jail. Correct. And there had been an overdose in the jail, not in the D unit, but in a different unit. There had been an overdose already in the jail.  I don't think the record's clear as to which unit. It seems so odd. So then your client Wendel gets moved to the D unit, and he just carries the fentanyl with him into the D unit? That's the record, Your Honor, yes. Okay. And one of the things we have here, one of the ways I think the government could have plugged the hole is in the D unit, in the D5 cell, which is where the overdose has occurred, there were six other inmates in that cell. The government didn't call any of the other six inmates to testify what happened. The government didn't call any of the other new inmates that arrived with Mr. Wendel that day into the D unit to testify that they didn't have fentanyl with them, that they weren't giving fentanyl from this other person, whoever, they're just giving fentanyl away. There was no testimony from that. And of course, there were more than 60 other inmates in the unit that the government could have called to testify about whether there was or wasn't fentanyl in the unit. And they didn't call any of them. They just called the cooperating witness, Via Pena, who really didn't have the personal knowledge to say what was going on in the entire unit. And so we think on that factual basis alone, the government didn't prove their theory as to the death. Now we also have the legal argument that their theory was legally invalid. And I do want to say we have two different sort of general principles of criminal law that are well-established principles that when Congress enacts a statute, it's enacting it with these principles in mind. The first is what I would call the Peony Principle, which is Judge Leonard Hand's opinion in Peony, that an upstream distributor is not responsible for the distributions of a downstream distributor unless there is a conspiracy between the two. Or the government can show with explicit evidence in aiding and abetting theory. And the government concedes here that there was no conspiracy between Mr. Wendell and Velazquez. And they concede that Mr. Wendell did not aid and abet Velazquez. So we have an odd situation here where the government's theory is that Mr. Wendell cannot be convicted of the distribution to Estrada, but he can be sentenced for the distribution to Estrada. And that just doesn't make any sense. All the cases the government cites, including the case that they cited yesterday afternoon, are conspiracy cases. They're all cases where you have conspirators and one of the conspirators distributes it to the victim who overdosed. And in that case, which is a completely different situation, yes, the defendant can be held liable under general principles of conspiracy law that you are responsible for your co-conspirator's acts. But we don't have that here. And Houston, the case that they primarily rely upon, did not address this type of situation. It was a direct distribution situation where the defendant distributed to the victim who overdosed. Plain and simple. And this issue wasn't addressed at all. So we think for those reasons the court should vacate the death finding. On the serious bodily injury, we have what I call two very big and obvious instructional errors with respect to serious bodily injury. The first is that the statutory definition wasn't given to the jury. That was error in and of itself. It was obvious. It was plain. There is a limiting definition of serious bodily injury in Title 21, and it just wasn't given to the jury. The second thing that was a big and obvious error was that there was a highly unusual inference instruction that was given in this case, which essentially directed the jury to find serious bodily injury. This court has been very critical of inference instructions for decades, has repeatedly warned judges not to give these types of instructions. Inferences are things that the attorneys argue in closing arguments. Instructions is the law that the judge gives to the jury. The judge is not supposed to interfere in the jury's consideration of the facts of the case. And it's the judge is supposed to let the attorneys argue the inferences. And even if it was somehow appropriate to give an inference instruction in this case, the one in this particular case didn't contain any of the cautionary language that is required under Ninth Circuit precedent. If the highly unusual step of an inference instruction is going to be given, the instruction itself has to advise the jury that they are not supposed to find the inference and that they have to consider all the facts of the case. And that just wasn't done. Let's just assume for a moment that I agree that the inference instruction is error. How is it not harmless error given the evidence introduced regarding Velazquez's overdose? Well, number one, we primarily rely on the Sixth Circuit's opinion, recent opinion, which came out after the trial in Ralston, where a defendant, it's very similar facts, overdoses on fentanyl, is given multiple doses of Narcan, is revived, is then brought to the hospital for some further evaluation and treatment. And the jury in that case found that there wasn't serious bodily injury. It's a very similar situation. So we think the jury could have found, if they were properly instructed, that there was not serious bodily injury. In addition, Velazquez himself never testified. So we don't even have the testimony of the victim to testify, you know, how he felt, what his condition was, did he feel injury or long-lasting effect, you know, any injury at all, let alone long-lasting effects or types of injury that would constitute the definition. So we think given the failure to call Velazquez and given a case like Ralston where a jury rejected a serious bodily injury finding, that there is prejudice, even under the plain error standard. And I see I've got about two minutes left. If there are no questions, I'll reserve. Thank you. Good morning, Your Honors. May it please the Court. Saria Bahadu on behalf of the United as SBI or the death supports the defendant's sentence in this case. So this Court would only need to affirm one of those injuries to support the sentence and it would not need to reach any of the issues depending on which injury that the Court would affirm. So focusing on serious bodily injury here, even if the issue was not waived, even if the issue is error that is plain, the instructional issue, we do believe that any error would be harmless. The evidence in this case proved beyond a reasonable doubt that Jose Velazquez suffered an overdose and faced a substantial risk of death. A nurse testified, specifically the nurse who revived Jose Velazquez, testified about how he came very close to dying, how he was coaching him to bring him back to life, how Jose Velazquez was blue, cyanotic, how he had to use maximum amount of oxygen, how he had to use nine doses of Narcan, which makes this case different than Rallstad. Rallstad had a pretty simple description of the facts. It was a young girl who found her uncle passed out. They called the paramedics and they then administered three doses of Narcan. The victim in that case testified and so the jury was able to assess their credibility. We understand that the victim didn't testify here, but that's by no means a requirement. And in many of these overdose cases, the victims don't testify, either because many of them have unfortunately passed away. Here, and especially under the standard of review, when looking at this evidence, we do believe that Jose Velazquez, we proved beyond a reasonable doubt. We also had a doctor testify and that doctor testified that nine doses of Narcan is three times the amount that is typical when reviving some of these individuals and because of that substantial reversal that had to occur, the victim was hospitalized overnight and then she also testified that without these medical interventions, that he would not have lived. So we do believe that if this court were to affirm on harmless abuse error, the court would not need to reach any of the issues relating to the death. And now just turn, unless the court has any questions on that, I'll turn to the issues counsels raised relating to the death. So just starting with the evidence, again, on sufficiency, there is the standard of review is in, it's deferential to the government. I want to talk about causation. Okay. Because I'm having a hard time with causation. I understand. It's clear that Wendell didn't bring the fentanyl into the jail, right? So it's not necessarily clear. And of course the record is what it is. I'll just direct the court. The discussion on this is at 2 ER 185 and it talks about, it's a recording that is played that defendant says somebody gave him the fentanyl in B unit. We did interview that person and we were limited. We didn't call that person to testify. So we were limited at what we could elicit as to what that, what that individual said. But essentially that person never made it to D unit. So all the facts in the record. Couldn't it be said though that Wendell had no interest in or knowledge of any alleged specific transaction between Velazquez and Estrada? Sorry, can you please repeat that? So on a practical level, couldn't it be said that Wendell had no interest or knowledge of any alleged specific transaction between Velazquez and Estrada? No, I don't believe so. Not on this record. Wendell. You would agree. So if we disagreed with you on that, wouldn't that impact the causation inference? No, it would not. And that's because Peony, as well as that Anderson case, they're focusing on the liability phase of this, of 841. 841 is it's basically breaks down into two structures and two phases. One is that liability phase 841A1A. Was there a knowing distribution? And that's where those principles of liability come in, such as aiding and abetting liability. But he knowingly distributed, or he made a swap with Villa. Via Peña. He distributed to, it's Via Peña. Okay. He sold it to Via Peña. Yes. After that, what does he carry? He got his soup. Well, that shows his invested interest in it. He wanted money from it. And he also specifically said to the detectives when he was in the medical intake room, and this is in our SCR, he specifically said, and I apologize for the language, I didn't get a fucking dime from my fentanyl being passed around. So he expected to be paid. And that's exactly the arguments we made in closing, that he expected to be paid because he was the supplier. He was the source. That shows his invested interest. Plus his drugs are the drugs that are tracked all the way through to Jose Velasquez, as well as Via Peña. Because as we proved during trial, our proof was that there was no alternative source. And with every inference in favor of the government, we believe we meet that sufficiency of the evidence standard. That makes this case also different than Anderson. Anderson, there wasn't proof that this wholesale supplier, that her drugs were the drugs that were in that specific transaction four rungs down. There also wasn't proof that she knew about the transaction, that she had any involvement in that transactions four rungs down. Here, that's just not the case. This is a limited universe. The cells, it's a fishbowl. They can see everything. Wendell knew about the deal. When Via Peña came back down with his soups, there was a conversation of, do you want me to put them in your box or mine? He said, no, put them in your box. And then of course, you have the statements from Wendell himself, where he specifically says, I didn't get a dime for my fentanyl. And where that shows his invested interest, which of course we don't have to show that he was going to get any money for us to prove distribution. But that evidence is compelling evidence, especially under that deferential standard. But again, that all speaks to the 841A1 violation. Once we establish substantive liability, we then go into the penalty phase. We then go into the questions of causation. And there is no mens rea with respect to causation. That's Houston, but it's also Colaso, which analyzes different penalties. But once we are in 841B, there is no mens rea requirement. And in Houston, this court specifically said that there is no foreseeability requirement. And what the defense is asking for, I mean, it phrases it as an intervening cause exception, but an intervening cause based on cases cited in the party's brief is something that is unforeseeable. So what the defense is asking for is to put foreseeability back on the table. And Houston has specifically said that foreseeability is not required. And so that holding that foreseeability is now required from an intervening cause exception lens would be, in our view, inconsistent with Houston. It also would be inconsistent with the statute. I would direct the court to Jeffries, which is a Sixth Circuit case that looks at what the statute says and how it's the use of the drug that results in the injury here. It's not the distribution plus use. It's not the defendant's conduct that led to the use. It is just the use. And it's limited to just can you trace the drugs that were used when this particular person suffered an injury. And Jeffries talks about how the defendant's conduct at that point is sort of off to the side. And so it would be a textual to import a foreseeability analysis, whether that be proximate cause or intervening cause. And then finally, no court has recognized foreseeability or even either from a proximate cause angle or an intervening cause angle. And that's even after Burrage. And that includes Jacobs, Alvarado, Hardin, and Jeffries. Those are all cases from different circuits, the Third, the Fourth, the Seventh, and the Sixth, that have specifically said after Burrage, we're still only requiring but for causation. And we also filed our 28J letter. The government is not aware of any case that has recognized formally a intervening cause exception. And in Lewis, the Eighth Circuit specifically rejected the arguments that are being made here. If I can say one final point on this before I run out of time, a lot of the cases talk about this. But it is inherently foreseeable that when somebody is dealing drugs and when someone is dealing dangerous drugs that Congress has said is dangerous, you know, schedule one and schedule two, those drugs will make it to an end user and they can death. This defendant brought into a prison fentanyl, a powerful and lethal drug. He immediately shared it with his cellmates. He then sold it and he expected to make money off of it. So unless the court has any other questions, we would submit on the arguments in our brief and ask that the court affirm the jury's findings on the death resulting in the SBI enhancements. All right. Thank you, counsel. Thank you, your honors. I wanted to make three quick points, one on the facts, one on sort of the legal argument and then on remedy as well. On the facts, I think the government, they kind of missed one big thing. They're talking about Mr. Wendell expected to be paid and he got the soups. Yeah, he knew about the distribution to Via Pena and I may be pronouncing that wrong. But you didn't hear them say he knew nothing about the distribution of Via Pena to Velazquez. He knew nothing about Velazquez's distribution to Estrada, if that's in fact how Estrada got the fentanyl. We don't know that. But assuming that's the case, he didn't know about it. He didn't care about it. He didn't he wasn't going to get paid for that. He had zero, nothing to do with that. So that's factually what I think needs to be clear. Legally, I think the government is trying to collapse our arguments into a reasonable foreseeability argument and then says reasonable foreseeability doesn't apply. And I want to make it clear, we have two separate arguments. The first argument is based on Peone and the Anderson case that we cited from the Seventh Circuit. That is a case that says that long-standing aiding and abetting law, you are not liable for the downstream distribution of other distributors. You're just not liable for it. And what they want to say is, well, maybe he couldn't be convicted under 841A of the distribution to Estrada, but he can be sentenced for it under 841B, which of course is inconsistent and doesn't make any sense. But they're also jumping, they're jumping over causation hurdles. There are two causation hurdles that they need to show. The first is that the 841A distribution violation caused the use of the drug. Then they have to show that the use of the drug caused the death. There are two steps and they're jumping over the first step. Mr. Wendell's distribution violation didn't cause Estrada to use the drugs. It was Velazquez's distribution violation that caused Estrada to use the drugs. So they're jumping over one element of causation. The final thing on remedy, because I see I'm out of time, I guess I take the, I think the court has discretion and I take the complete opposite view. If the court finds, wants to just address one of them and finds that one of the, either the death or the serious bodily injury is invalid, I think you reverse, you send it back to the district court and then the district court can reevaluate how they want to do the sentence and the defense can make additional arguments as to why a 20-year mandatory minimum shouldn't apply. So I think that if you find that either of the two are invalid, you reverse and allow, the district court may do the same thing, we don't know, but I would like to make additional arguments on Mr. Wendell's behalf on remand if the court finds that one of the two are flawed. And that, I would submit with that, your honors. All right, thank you very much, counsel. U.S. versus Wendell is submitted.
judges: WARDLAW, DESAI, ALBA